18208. JAMES *v.* THE STATE.

The evidence in behalf of the State, being negative in its character, is, in view of the testimony for the defendant and his statement, insufficient to authorize his conviction of vagrancy.

DECIDED JULY 14, 1927.

Vagrancy; from city court of LaGrange—Judge Tuggle. May 2, 1927.

*Duke Davis, E. A. Jones,* for plaintiff in error.

*L. L. Meadors, solicitor,* contra.

BLOODWORTH, J. The indictment for vagrancy charged that the accused led "an idle, immoral, and profligate life, he having no property to support him and being able to work and not working." There is no evidence to support the allegation that the accused led an immoral and profligate life, and this is not insisted upon by the State. Did the evidence support the charge that the defendant lived "an idle life, being able to work and having no property to support him?" Three witnesses testified for the State. A county policeman who lived in West Point, but usually left that city early in the morning, swore that the accused moved into Troup county about three months before the trial of the case and lived in West Point; that the accused was a painter and carpenter; that he saw him nearly every day early in the morning, and that he had never seen him do any work, but that he had heard about his painting a filling station at West Point. A member of the police force at West Point swore that the accused is "able to work and has no visible means of support that I know of. . . I could not swear that he does not work, I just don't see him at work. . . I heard about his painting a filling station." Another policeman testified that the accused "moved to West Point about three months ago. I have not seen him at work

---

Criminal Law, 16 C. J. p. 761, n. 25; p. 762, n. 26.
Vagrancy, 39 Cyc. p. 1109, n. 8; p. 1112, n. 25.

since he moved over there. . . Sometimes there are several days that I do not see him. . . He does not steal that I know of. . . He does not gamble that I know of." This witness and the county policeman each swore that, as far as he knew, the accused paid his bills, and each swore that the defendant was not a charge upon West Point or Troup county.· It will be noted that the evidence as to his being idle is negative in its character. See *Mooney* v. *State,* 32 *Ga. App.* 448 (123 S. E. 734); *Baugh* v. *State,* 32 *Ga. App.* 496 (123 S. E. 923). A witness for the defendant testified that the accused painted a filling station at West Point and was paid for the work. Another witness for the accused swore: "I had some work for him to do last year. . . He worked for me as long as the work lasted. I had him building some garages." The defendant stated: "I am a painter and carpenter. Last year I did a good deal of work over in Alabama. I built two houses over there for Mr. Sims. I helped build a concrete building just across the State line, for the junk man down there. That took nearly all the summer. Then I helped build the Kress building and another one right by it. Then I worked two weeks down at Opelika, Ala., on some work down there until that job gave out. Mr. Dixon wanted me to cover the house I live in and do some patching on it. I did that and let it go on the rent. Then I painted this filling station down there at West Point. I got $50 out of that job. You can see the paint is still on my shoes. These are the shoes I painted it in, and you can see where the paint spattered on it and is still there. In my line of work you can't get work at all times. There is times that the work is dull and you can't get any work. This year I have been over in West Point, just moved over there, and work has been hard to find. I have been promised work on the new church down there as soon as the brick work is out of the way so that the carpenters can start in. I have been by there several times to see about that, because they said that they would use me when the brick work is through. I work whenever I can get the work to do. I provide for my family and pay my grocery bills and pay my rent. I don't call on anybody for any help."

Under the charge on which the State is asking for a conviction it must appear that, the accused having no visible and known means of a fair, honest and reputable livelihood, and being able

to support himself by his own labor, he failed to work, lived in idleness, and was or threatened to become a drone or a charge upon the public. *Hartman* v. *State,* 119 *Ga.* 427, 429 (46 S. E. 628). These things do not appear from the evidence in this case. In *Leonard* v. *State,* 5 *Ga. App.* 494 (63 S. E. 530), this court said: "Our statute as to vagrancy is intended to enforce honest and reputable living, but it does not tend to luxury, nor compel any one to earn more than his necessities require." It is apparent from the record in this case that the accused, during the several months preceding his arrest, must have earned a sufficient amount of money to support himself honestly, even though it was in a meagre style. In his statement he said: "I work whenever I can get the work to do, and I provide for my family and pay my grocery bills and pay my rent." Taking the record as a whole, we think that the verdict was unwarranted, and that the trial judge should have granted a new trial. See *Lewis* v. *State,* 3 *Ga. App.* 322, 324 (59 S. E. 933); *Ray* v. *State,* 33 *Ga. App.* 50 (125 S. E. 767); *Daniel* v. *State,* 110 *Ga.* 915 (36 S. E. 293).

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*